UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:                                                          Chapter 11

90 West Street LLC,                                  Case No. 18-40515-NHL

                    Debtor.
-------------------------------------------------------x

## DEBTOR'S APPLICATION TO EMPLOY
## BROKER TO CONDUCT AUCTION SALE

The Application of 90 West Street, LLC (the "Debtor"), in support of the pre-fixed order seeking authorization to employ and retain Meridian Capital Group LLC ("Meridian") as the Debtor's broker pursuant to Section 327 (a) of the Bankruptcy Code, represents and shows this Court as follows:

1. The Debtor filed a petition under Chapter 11 of the U.S. Bankruptcy Code on January 30, 2018, and thereafter has continued to operate as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. The Debtor owns certain real estate located at 90 West Street in Wilmington, Massachusetts, which is used as a 142 bed skilled nursing facility, operating by a non-debtor affiliate known as Woodbriar Health Center LLC ("Woodbriar").

3. During the pendency of the Chapter 11 case, and in settlement of a motion to vacate the automatic stay filed by the Debtor's secured creditor, Oxford Finance LLC ("Oxford"), the Debtor has entered into a Stalking Horse Agreement with an insider group led by Sigmund Brach. The Stalking Horse contract is part of a formal auction process being conducted in conjunction with the sale of Woodbriar by a state court receiver, together with other assets relating to the Grosvenor Nursing Home.

4. In furtherance of the auction process, the Debtor obtained approval of certain bidding procedures (including approval of the Stalking Horse contract with Sigmund Brach), subject to competitive bidding, and the appointment of a broker to conduct the auction, now scheduled for July 27, 2018.

5. In view of the foregoing, the Debtor here seeks to retain Meridian as the broker to conduct the auction. Meridian was recommended to the Debtor by its secured creditor, Oxford, and is a leading brokerage firm in the nursing home industry.

6. The Debtor has consulted with representatives of Meridian to negotiate the brokerage agreement (the "Agreement") annexed hereto as Exhibit "A".

7. The Agreement provides a proposed brokerage commission formula based upon a sliding scale formula of two (2%) percent commission with respect to a third party buyer and a lesser commission of one (1%) percent relating to excluded purchasers (i.e., persons who have shown an interest prior to Meridian's involvement), subject to a bonus if the auction generates a cash payment over $30 million. The commissions are calculated upon the cash portion of the purchase price to be paid to the secured creditor and shall be due at closing.

8. The Debtor believes that this commission formula is consistent with industry standards and fair and reasonable under the circumstances.

9. Meridian is a well-regarded brokerage firm, with nationwide experience. The firm has no prior relationship with the Debtor, its creditors or equity holders except that Meridian previously represented certain other clients which obtained financing for nursing home transactions from Oxford. None of these matters involve the Debtor or are ongoing.

10. In view of the foregoing, Meridian does not hold an interest adverse to the Debtor's estate and is sufficiently disinterested to serve as the broker in connection with the auction sale pursuant to Section 327 (a) of the Bankruptcy Code.

11. A separate Declaration of Disinterestedness is also being submitted in support of this Application.

WHEREFORE, the Debtor prays for entry of the pre-fixed order, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
June 25, 2018

GOLDBERG WEPRIN FINKEL
GOLDSTEIN LLP
Attorneys for the Debtor
1501 Broadway, 22 Floor
New York, NY 10036
(212) 221-5700

By: /s/ Kevin J. Nash

**EXHIBIT A**

# GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP

ANDREW W. ALBSTEIN*
ARNOLD I. MAZEL
STEVEN R. UFFNER
HARVEY L. GOLDSTEIN
NEAL M. ROSENBLOOM
KEVIN J. NASH
IRIS A. ALBSTEIN
BARRY E. ZWEIGBAUM
DOUGLAS TAUS
ROBERT W. LO SCHIAVO*
ELIZABETH SMITH*▲†
MATTHEW E. HEARLE
AUBREY E. RICCARDI*
STEPHEN BORDANARO
ANTHONY J. SCHLUR
DANIEL J. SLATZ

J. TED DONOVAN
DORAN I. GOLUBTCHIK
MICHELLE A. McLEOD*
ARTHUR A. HIRSCHLER
ELI D. RAIDER
HOWARD S. BONFIELD
SERGIO J. TUERO*
JAY E. SIMENS
STEWART A. WOLF*
YAN LAURENCY
ERIC ZARATIN
JOHN P. HOGAN
AVROHOM C. POSEN*
ANNA ARELLANO
NEIL I. ALBSTEIN*
GREGORY C. RICHMAND

ATTORNEYS AT LAW

Kevin J. Nash, Esq.
Direct phone: (212) 301-6943
Facsimile: (212) 221-6532
knash@gwfglaw.com

22ND FLOOR
1501 BROADWAY
NEW YORK, N.Y. 10036
(212) 221-5700
TELECOPIER (212) 730-4518

BENJAMIN C. KIRSCHENBAUM
ROBERT A. KANDEL
(OF COUNSEL)

EMANUEL GOLDBERG (1904-1988)
JACK WEPRIN (1930-1996)
BENJAMIN FINKEL (1905-1986)

* ALSO MEMBER OF NEW JERSEY BAR
▲ ALSO MEMBER OF TEXAS BAR
† ALSO MEMBER OF MASSACHUSETTS BAR
‡ ALSO MEMBER OF FLORIDA AND WASHINGTON DC BAR

June 25, 2018

Meridian Capital Group, LLC
1 Battery Park Plaza, 26th Floor
New York, NY 10004
Attention: Legal Department

Re:   Exclusive Right to Sell Agreement

Dear Mr. Dobkin:

By executing this letter agreement (the "*Agreement*"), and subject to Bankruptcy Court approval, Kevin Nash, as attorney for the affiliated owners of the Property (defined below) (the "*Owner*") hereby appoint(s) Meridian Capital Group, LLC ("*Meridian*") as Owner's sole agent and grant(s) to Meridian the exclusive right to market and conduct an auction sale of the that certain real property consisting of (i) Grosvenor Park Health Center, located at 7 Loring Hills Avenue, Salem, MA 01970, and (ii) Woodbriar Health Center, located at 90 West Street, Wilmington, MA 01887 (collectively, the "*Property*"). For the purposes of this Agreement, the term "*sale*" or "*sells*" shall include a disposition of the entire Property consistent with the existing "stalking horse" bid (which bid has been provided to Meridian) and/or any or all of Owner's interests in the Property, including, without limitation, development and air rights appurtenant thereto. This Agreement is subject to the following terms and conditions:

1. The term of this Agreement shall commence on the date hereof and shall continue through the date of the auction (the "Auction") tentatively scheduled for July 27, 2018 (the "Exclusive Period").

2. Meridian, at its own expense, but subject to Owner's reasonable approval, shall prepare a marketing brochure, offering package or similar marketing materials ("Marketing Materials") for distribution to prospective purchasers based on documentation and information provided by Owner or Owner's representatives. Owner acknowledges and consents to Meridian's intention to disseminate the

Marketing Materials to prospective purchasers, and as such represents and warrants that, to the best of Owner's knowledge, any documentation and information supplied by Owner shall be complete and accurate and shall be updated and/or corrected as necessary. Owner further consents to Meridian using its name and logo in any "tombstone" or other advertisement announcing the successful consummation of any of the transactions contemplated hereunder.

3. During the Exclusive Period, Owner will refer all inquiries and offers received with respect to the Property to Meridian, regardless of the source thereof, and all negotiations shall be conducted jointly between Owner and Meridian. Likewise, Meridian shall provide a status report to Owner and Owner's lender on a weekly basis. Meridian has no authority to enter into an agreement on Owner's behalf and will make no such representation to any prospective purchaser. Instead, Meridian shall solicit offers in accordance with the "bidding procedures orders" (which have been provided to Meridian) entered in the Bankruptcy Court and State Court.

4. Meridian shall be entitled to a full Commission in the event that Owner sells the Property to any entity that becomes the highest bidder at the Auction, including, without limitation, the current "stalking horse" bidder.

5. Meridian's commission (the "*Commission*") in connection with a sale, transfer or joint venture of the Property shall be equal to two percent (2.00%) of the gross cash sales price (e.g., without deduction for closing expenses, adjustments or costs of any kind). The Commission shall be deemed earned upon the execution of a contract of sale (or other similar agreement) for the Property and shall be due and payable at closing.

    Notwithstanding the foregoing, in the event that the purchaser of the Property is an Excluded Purchaser (defined below), the Commission shall be deemed reduced to an amount equal to (i) one percent (1.00%) of each dollar of the gross sales price less than or equal to $21,000,000.00 plus (ii) two percent (2.00%) of each dollar of the gross sales price greater than $30,000,000.00. As in the first paragraph of this section, in each case the gross sales price shall be determined without deduction for closing expenses, adjustments or costs of any kind. As used herein, an "*Excluded Purchaser*" shall mean any purchaser listed on Schedule A hereto.

6. Owner also understands that Meridian will not advise it as to the legal or tax effects of any transaction. Meridian shall have no obligation to investigate conditions on or the condition of the Property, nor the financial stability or capability of any prospective purchaser, and Owner understand that it should engage technical staff and other analytical personnel to advise and assist therewith.

7. To the fullest extent permitted by applicable law, the Owner shall indemnify and hold Meridian and its employees, agents, successors, and assigns (each a "*Covered Person*") from and against any and all losses, claims, demands, liabilities, expenses, judgements, fines, settlements and other amounts arising from any and all claims, demands, actions, suits, proceedings, civil, criminal, administrative or investigative in which the Covered Person may be involved, or threatened to be involved; as a party or otherwise, relating to or arising out of this Agreement, except that no Covered Person shall be entitled to such indemnification with respect to any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's gross negligence, willful misconduct or willful breach of this Agreement.

8. Meridian shall not be liable for incidental, punitive, exemplary, indirect or consequential damages, or lost profits arising under or relating to this Agreement. Meridian's liability for any damages or other monetary amounts relating to this Agreement shall not exceed the total fees received by Meridian under this Agreement.

9. This Agreement shall be binding upon the parties hereto and their respective successors and assigns. Neither party shall have the right to assign this Agreement without the consent of the other party.

10. Owner acknowledges that Broker is a national financial intermediary and may represent prospective purchasers through debt placement engagements and Owner consents to such representation.

11. This Agreement shall be deemed to have been made under and be construed in accordance with the laws of the State of New York. The parties consent to the exclusive jurisdiction of the U.S. Bankruptcy Court for the resolution of any disputes that arise under this Agreement. In the event that any action, suit or other proceeding in law or in equity is brought in connection with any term or provision in this agreement, and such action results in the award of a judgment for money damages or in the granting of any injunction or restraining order, all expenses (including reasonable attorneys' fees) of the prevailing party in such action, suit or other proceeding shall be paid promptly by the non-prevailing party.

12. Meridian represents and warrants that it is duly licensed under the laws of the State of New York as a real estate broker and Meridian agrees that it shall maintain in good standing and renew such license(s) throughout the term of this Agreement.

13. This Agreement incorporates the entire understanding of the parties with respect to this engagement of Meridian by the Client and supersedes all previous agreements regarding such engagement, should they exist, and shall be governed by, and construed and enforced in accordance with, the laws of the State of New York (without regard to conflicts of law principles). If any term of this Agreement

is held by a court of competent jurisdiction to be invalid or unenforceable, then this Agreement, including all of the remaining terms, will remain in full force and effect as if such invalid or unenforceable term had never been included. This Agreement may not be modified or amended except by a written agreement duly executed by the parties hereto.

14. This Agreement may be executed in counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument. Facsimile and portable document format (PDF) signatures are acceptable to effectuate the terms of this Agreement.

If the foregoing accurately sets forth our agreement, please sign and return the enclosed copy of this letter.

Very truly yours,

By: /s/ Kevin J. Nash, Esq.
    Name: Kevin Nash, as attorney for the affiliated owners of the Property

Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, NY 10036

Agreed To:

**MERIDIAN CAPITAL GROUP, LLC**

By: /s/ Ari Dobkin

## SCHEDULE A

Excluded Purchasers

1. Bentley South Windsor Operating LLC
2. Solid Rock Group (iCare Health as Operator)
3. Morris Health Management, LLC
4. Advocate Healthcare Management, LLC
5. Oxford Finance, LLC
6. The Stalking Horse